Carlos **AGUILAR**; Eugenia **Balcarcel**; Dalton **Castellano**; Ralph **Degracia**; Apolonio **Palencia**; Blanca **Rivera**; and Enrique **Valderama**, Plaintiffs,

v.

**BAINE SERVICE SYSTEMS, INC.; Paul Baine, individually and as President, Defendants.**

No. 82 Civ. 0886 (KTD).

United States District Court, S. D. New York.

March 22, 1982.

Puerto Rican Legal Defense and Ed. Fund, Inc., New York City, for plaintiffs; Cesar A. Perales, Robert L. Becker, Rosaria R. Esperon, Johnny Colon, New York City, of counsel.

Miller & Bush, New York City, for defendants; Irving T. Bush, New York City, of counsel.

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Carlos Aguilar, Eugenia Balcarcel, Dalton Castellano, Ralph Degracia, Apolonio Palencia, Blanca Rivera and Enrique Valderama, Hispanic employees of defendant Baine Service Systems, Inc. ("Baine"), seek a preliminary injunction ordering the defendants to retain the plain-

tiffs in their employ. Defendant Baine and defendant Paul Baine, sued individually and as President of Baine, cross move to dismiss plaintiffs' complaint.

The complaint alleges that the plaintiffs have been employed by Baine since December, 1979. The plaintiffs charge that the defendants engaged in discriminatory practices based on the plaintiffs' Hispanic origin consisting of persistent denial of days and holidays off and harassment. These practices culminated in the filing of complaints with the New York State Division of Human Rights by all plaintiffs between November 30, 1981 and December 3, 1981. On January 8, 1982 all the plaintiffs, except Ralph Degracia, received a letter from Paul Baine suspending their employment due to "willful, malacious [sic] and untrue accusations concerning your employer." *See* letters attached to plaintiffs' Notice of Motion for a Preliminary Injunction. Mr. Baine sent subsequent letters to the suspended plaintiffs on January 11, 1982 offering reemployment under the same terms and conditions at a nearby facility. It appears that this letter might have been sent with ulterior motives as all of the plaintiffs unsuccessfully attempted to renew their employment and were denied unemployment benefits on account of the outstanding job offer.

The instant action was filed on February 17, 1982.[1] Plaintiffs were subsequently reinstated pending resolution of this motion.

### I.

■ The threshold inquiry in this case is whether plaintiffs' failure to obtain a "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC") precludes any action for injunctive relief. Plaintiffs' complaint avers discriminatory behavior in violation of Title VII, which requires that plaintiffs obtain a right to sue letter, issued by the EEOC to allow a civil action to proceed, prior to commencing litigation. 42 U.S.C. § 2000e–5. Plaintiffs concede that no such letter was obtained.

---

1. Defendants allege that the summons and complaint were improperly served thereby invalidating this court's exercise of jurisdiction.

However, for purposes of expediting the decision on this motion only, defendants waive their jurisdictional objection.

Plaintiffs filed their complaints with the New York State Division of Human Rights and it appears from the complaints themselves that they were then referred to the EEOC. No right to sue letter has been forthcoming.

The Second Circuit recently decided in a case on point that "the court is entitled to use its inherent equity power to award temporary injunctive relief, in appropriate circumstances, in order to maintain the status quo prior to the EEOC's issuance of a right to sue letter." *Sheehan v. Purolator Courier Corporation and Purolator, Inc.*, 676 F.2d 877 at 881, (2d Cir. 1982). The congressional goal underlying the enactment of Title VII and its 1972 Amendments was to strengthen the remedies available to a discriminated employee to eradicate discrimination from the workplace. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). It would be inconsistent with this goal to construe the technical requirements of Title VII rigidly to foreclose the possibility of immediate relief for an aggrieved plaintiff. The *Sheehan* decision recognizes the importance of observing the policy goals of Title VII and thus places this Circuit in accord with the Fifth, Eighth and Ninth Circuits' holdings that a right to sue letter is not a jurisdictional prerequisite to preliminary relief. *McNail v. Amalgamated Meat Cutters and Butcher Workmen*, 549 F.2d 538 (8th Cir. 1977); *Berg v. Richmond Unified School District*, 528 F.2d 1208 (9th Cir. 1975); *Drew v. Liberty Mutual Insurance Co.*, 480 F.2d 69 (5th Cir. 1973), *cert. denied*, 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974). Resolution of this preliminary issue allows me to address the merits of plaintiffs' preliminary injunction.

## II.

■ Issuance of a preliminary injunction in the Second Circuit is governed by the standard enunciated in *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979). Plaintiffs must show:

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

596 F.2d at 72. The material facts in this case are not in dispute. Defendants concede that the plaintiffs were fired; that letters of suspension were mailed to all the plaintiffs except Mr. Degracia; that written offers of re-employment were made and that the plaintiffs were reinstated pending this court's decision. The affidavits submitted by the defendants dispute the plaintiffs' allegations of discriminatory practices, however, these allegations are not germane to resolution of a preliminary injunction motion based on a Title VII retaliatory claim. This motion, therefore, does not raise issues of facts requiring an evidentiary hearing. *See Forts v. Ward*, 566 F.2d 849, 852 (2d Cir. 1977); *Securities and Exchange Commission v. Frank*, 388 F.2d 486, 492 (2d Cir. 1968).

### 1. *Irreparable Harm*

■ If a preliminary injunction is not issued, plaintiffs will lose their jobs and sole means of financial support. *See* affidavits attached to Plaintiffs' Motion for Preliminary Injunction. The opportunity for unemployment insurance only exists if the defendants do not renew their allegedly empty promises of reemployment. The general rule is that an injunction should not issue when the remedy at law is adequate, *Jackson Dairy, supra*, 596 F.2d at 72. However, the harm generated by loss of employment extends beyond financial boundaries. The plaintiffs face eviction, cut-off of their utilities and the inability to provide for their children. "[I]n many cases the effect on the complainant of several months without work . . . will constitute harm that cannot be adequately remedied by a later award of damages." *Sheehan, supra*, at 886. The plaintiffs' circumstances present ample support for a finding of irreparable harm.

### 2. *Sufficiently Serious Questions*

Plaintiffs assert, *inter alia*, that the termination of their employment was in retali-

ation for their filing of complaints with the New York State Division of Human Rights. Section 704(a) of Title VII prohibits discrimination against any employee:

> because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). Plaintiffs' referral of their complaints to the EEOC brings defendants' alleged retaliation within the purview of Title VII.

 In order to establish a claim for a Title VII retaliation suit, plaintiff must show:

> first, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging person engaged in protected activities; and third, a causal connection between the first two elements, that is, a retaliatory motive playing a part in the adverse employment actions.

*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980). Application of this legal standard to this case presents substantially serious question on the merits to satisfy *Jackson Dairy.* First, defendants' knowledge of plaintiffs' complaints is demonstrated by the defendants' January 8, 1982 letter citing the plaintiffs' accusations as grounds for suspension. Second, the suspension of the plaintiffs from defendants' employ appears on its face to be an obvious example of an "employment action disadvantaging persons engaged in protected activities." Third, the causal connection link is established by the text of the January 8 letter; suspension resulted from the accusations. While I am not conjecturing as to the outcome of plaintiffs' retaliation suit, I do find that the facts require a studied evaluation of the merits.

### 3. Balance of the Hardships

 The *Jackson Dairy* analysis requires that after this court determines that both

---

**2.** The first prong of the *Jackson Dairy* test, "likelihood of success on the merits," need only

irreparable harm and sufficiently serious questions addressing the merits are present, a balance of hardships tipping towards the plaintiffs must be found before an injunction will issue.[2] The scale in this case is weighted heavily in favor of the plaintiffs. On the one hand, if an injunction is not forthcoming, plaintiffs lose their livelihood and sole financial means. On the other hand, if an injunction does issue, defendants will merely be required to retain the plaintiffs in their current employ pending administrative resolution. Defendants' agreement to rehire the plaintiffs while the parties await this court's ruling illustrates the lack of real hardships defendants will suffer if the status quo is maintained.

For the above reasons, I conclude that plaintiffs have adequately satisfied the requirements for issuance of a preliminary injunction. Accordingly, plaintiffs' motion is granted and defendants' cross motion to dismiss is denied.

SO ORDERED.

---

be addressed if the plaintiffs' case fails to satisfy the second prong.